608 A.2d 317

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JOSEPH
NICHOLAS CRISAFI, A/K/A JOSEPH TRISAFOLLI, A/K/A
A. ALDDAN, DEFENDANT–RESPONDENT.

Argued March 3, 1992—Decided July 9, 1992.

*Barbara A. Rosenkrans,* Assistant Prosecutor, argued the cause for appellant (*James F. Mulvihill,* Acting Essex County Prosecutor, attorney).

*Frank J. Pugliese,* Assistant Deputy Public Defender, argued the cause for respondent (*Wilfredo Caraballo,* Public

Defender, attorney; *Frank J. Pugliese* and *Pamela Lynn Brause*, Designated Counsel, on the briefs).

The opinion of the Court was delivered by

POLLOCK, J.

The sole issue is whether defendant, Joseph Nicholas Crisafi, knowingly and intelligently waived his right to counsel before proceeding *pro se* at his trial for aggravated sexual assault and related charges. A jury convicted defendant, but the Appellate Division reversed, finding that he had not so waived that right. 247 *N.J.Super.* 486, 589 *A.*2d 1033 (1991). We granted certification, 127 *N.J.* 545, 606 *A.*2d 360 (1991), and now reverse.

On November 5, 1980, defendant and his girlfriend, Carol Terranova, while using false names and posing as representatives of a fictitious modeling agency, visited the home of the victim, S.K., to discuss the possibility of a modeling career. Crisafi told the victim that she would make a "perfect" lingerie model, and photographed her twice in the living room, while she was fully clothed. He then told S.K. that he would like a photograph of her in her undergarments and that because S.K. was apprehensive, Terranova would take the photographs. The victim agreed, and she and Terranova went upstairs to the victim's bedroom, where Terranova photographed her. When Terranova showed the photographs to defendant, he said he was dissatisfied with them, and he directed Terranova to take additional pictures. Terranova then requested the victim to remove her underwear. S.K. agreed "as long as [Terranova] was taking the picture." After taking one photograph, Terranova went downstairs and gave the photograph to defendant, who told Terranova to "go sit out in the car and wait for him."

Defendant then went upstairs and sexually assaulted the victim. We need not describe in detail the indignities that defendant visited on S.K. Suffice it to state that at gunpoint, he forced her to perform fellatio, attempted to strangle her, and inserted his finger into her vagina. Defendant also poked the

victim in the abdomen with a letter opener and punched her repeatedly. As he attempted to bind the victim's ankles, she broke free and escaped to a neighbor's house.

Defendant was indicted for first-degree aggravated sexual assault (*N.J.S.A.* 2C:14–2), first-degree armed robbery (*N.J.S.A.* 2C:15–1), second-degree aggravated assault (*N.J.S.A.* 2C:12–1b(1), third-degree unlawful possession of a handgun (*N.J.S.A.* 2C:39–5b), fourth-degree possession of a weapon (the letter opener) under circumstances not manifestly appropriate for a lawful purpose (*N.J.S.A.* 2C:39–5d), and second-degree possession of a handgun and a letter opener for an unlawful purpose (*N.J.S.A.* 2C:39–4a). A warrant was issued on December 8, 1980, for defendant's arrest. More than five years later, in August 1986, defendant was arrested in Texas and extradited in February 1987 to New Jersey.

To evaluate defendant's claim that he did not knowingly and intelligently waive his right to counsel, we review in some detail the pre-trial proceedings. Defendant first appeared before the trial court for arraignment on March 13, 1987. By that date he had not yet established his eligibility for representation by the Public Defender, so a pool attorney, Harold Fullilove, appeared for him. On behalf of defendant, Fullilove entered a not-guilty plea and waived a reading of the indictment. Defendant then excused Fullilove so defendant could argue *pro se* two motions, one for a writ of habeas corpus and the other for discovery.

The Public Defender assigned another attorney, Anthony Blasi, to represent defendant, but Mr. Blasi declined the assignment. Mr. Fullilove accompanied defendant on his next appearance before the court. Defendant informed the court that Blasi had withdrawn from the case because of Blasi's semi-retired status and heavy caseload. Mr. Blasi, however, advised the court that he had withdrawn as defendant's counsel because he and defendant disagreed about trial strategy.

On May 22, 1987, defendant and Mr. Fullilove appeared a third time, at which time the following colloquy occurred:

THE COURT: Mr. Crisafi, we have Mr. Fullilove who, I understand, has been designated to represent you.

 \* \* \* \* \* \* \* \*

THE DEFENDANT: I decline representation of this counsel at this time. I have—

THE COURT: You mean you want to represent yourself?

THE DEFENDANT: No, not really. I would like representation, and if it's necessary, I will go in *pro se* rather than—

THE COURT: That's up to you, but I'm not going to allow you to make a choice as to who is going to represent you.

THE DEFENDANT: All right, your Honor, then I will represent myself.

THE COURT: That's up to you. I will have to ask counsel to sit by to assist you with whatever technicalities of the law you may be advised of.

Defendant then argued motions, one to dismiss the indictment for reasons of delay and the other to reduce bail. At the conclusion of the proceedings, the following exchange took place:

THE COURT: Mr. Crisafi, wait just a moment. Let's get something straight. Either you are going to be represented by counsel, or you are going to do the talking, either way, make up your mind.

 \* \* \* \* \* \* \* \*

[The following took place at sidebar]

MR. FULLILOVE: I have had the opportunity to talk to Mr. Crisafi, about the issue of representation and what he's expressed to me could readily be described as his view of trial tactics. I can't say that they are at all unfounded. I mean, I can understand the tactics he wishes to employ, but I'm in a position where I can't do anything at this stage. I can understand his tactics. I don't want to put them on the record because I might be violating what he has told me.

THE COURT: You probably would be. Go ahead.

MR. FULLILOVE: But I would like the opportunity—It's going to be difficult for me to sit here and advise him when in fact perhaps what would make most sense is to go to the Public Defender and see if they couldn't in fact assign an attorney.

THE COURT: As far as I understand, you are assigned to represent him.

MR. FULLILOVE: Yes, and that's not going to make.

THE COURT: He is going to make his choice. I can't let him decide who's going to represent him in the Public Defender's office. He is not going to have that choice, and I will tell him that. He either has to decide that he's going to try it himself, with a Public Defender assisting him in the technical aspects, or he will be bound by a lawyer representing him. I won't play games with him, and I'm going to make that clear.

The trial court then gave defendant until May 27 to decide whether to proceed with assigned counsel or to try the case on his own with the assistance of standby counsel.

Defendant informed the court on August 2, 1987, that he had dismissed Fullilove. In reply, on August 7, 1987, the court sent a letter informing defendant that the Public Defender would not assign a different attorney to represent him. The court warned defendant that "if you persist in your refusal to have him try this case in your behalf, you will be placed in the position of trying this case *pro se* with Mr. Fullilove sitting with you to assist you with all the legal technicalities involved." The court appointed Jed–Matthew Philwin, a private attorney, to appear on defendant's behalf at all subsequent pre-trial motions. During one of his appearances with Philwin, the court engaged defendant in the following discussion:

THE COURT: Before we proceed, Mr. Crisafi, I want to clear the air as to one point. Some time ago there was a discussion held in this Court at which time you indicated you did not want Mr. Fullilove. Do you remember?

MR. CRISAFI: Absolutely.

THE COURT: And I told you that the Court at that time had contacted the Public Defender's Office to obtain new counsel for you and they said they would not, that you were obligated to take Mr. Fullilove or go pro se. And I mentioned that to you and you said that being the case you would go pro se.

MR. CRISAFI: No, I did not, sir.

THE COURT: All right. I think the record will indicate otherwise. I think the record indicates otherwise. I never would have proceeded.

MR. PHILWIN: Your Honor, if I may intercede here. I had spoken with Mr. Crisafi about a week and a half ago and I don't know exactly what the words are going to be on the record, but he indicated to me that he felt he was being forced to go pro se. He said he just didn't want to have Mr. Fullilove as his attorney. The issue was then from the Public Defender's standpoint—Office of the Public Defender that they do not have to give a defendant a selection of attorney.

THE COURT: Yes.

MR. PHILWIN: At that point the Office of the Public Defender is out of the case. I am here, my understanding is anyway, I am here as a courtesy to the Court.

THE COURT: That's right.

MR. PHILWIN: Whether that be in the capacity to sit here—

THE COURT: This is why I say if Mr. Crisafi is willing to have you represent you [sic] and you are willing to represent him, by all means, this Court will accept that willingly. But, I cannot have you appearing without—

MR. CRISAFI: I feel that I'm—

THE COURT: —they said they will not assign a Public Defender to you—

MR. CRISAFI: I feel that I'm being denied by [sic] right to counsel.

THE COURT: No, you are not. That's the law.

MR. CRISAFI: I think I showed an adequate case. I have sufficient letters sent to you and to Mr. Fullilove and to the Public Defender to show that Mr. Fullilove was not representing me.

THE COURT: That is something between you and the Public Defender's Office. They have said they would not assign another attorney. If you are willing to accept Mr. Philwin's offer, fine, but they will not assign anyone and I will have Mr. Philwin, at the request of this Court, sit in with you if you want to try the case yourself.

MR. CRISAFI: I am being forced to try it. There is no other alternative.

THE COURT: No, you are not being forced. It is an election you are making. I am telling you that the Public Defender will not assign. Your argument is with the Public Defender, not with me.

MR. CRISAFI: I realize that, your Honor.

THE COURT: If you are willing to have Mr. Philwin try this case for you as your attorney, he has indicated that he is willing to do so if we requested.

MR. CRISAFI: I realize that I don't have a Constitutional right to decide how my attorney is going to represent me, but I did prematurely speak to the attorney and he had an opinion that I couldn't go along with of how to handle the defense. It was an intelligent explanation he gave me, but it wasn't one that I would want to handle my defense.

THE COURT: Are you willing to have Mr. Philwin try the case?

MR. CRISAFI: That's who I'm talking about. We discussed—he was advising me freely. The way he explained it to me, that he would handle my defense in this matter is not to my—

THE COURT: I have no choice but to say then the case will go on with Mr. Philwin sitting in to advise you as to the technicalities of the law.

\* \* \* \* \* \* \* \*

THE COURT: If he's willing to proceed in that way [with Philwin as standby counsel], I have no objection. But, I have no control over whom the Public Defender will assign to him. As long as, Mr. Philwin, you and Mr. Crisafi understand that if he tries the case he's going to be subject as any other person trying a case to the Rules and Regulations of the law as to the trial of this procedure.

On December 9, 1987, the court engaged in a final conversation with defendant regarding his counsel:

THE COURT: \* \* \* Another question I want to ask you, I want you to fully understand that if it is your intention to try the case yourself with Mr. Philwin

sitting alongside to advise you as to the rules and court procedures, you're going to be tried just as if I'm treating any other attorney practicing here. You're subject to the rules of court. Do you understand that?

MR. CRISAFI: Fully.

THE COURT: And if I want to find out now if it is your intention to represent yourself or whether you want Mr. Philwin to try this case for you.

MR. CRISAFI: If I may be permitted to repeat myself. I'm sure Mr. Philwin is competent. I do not agree in Mr. Philwin's line of defense on my behalf. Therefore I cannot have Mr. Philwin represent me.

Defendant then argued that he had been denied the right to counsel of his choice. The trial court disagreed. After reciting the history of defendant's contentious relationships with counsel, the court asked defendant whether he wanted Mr. Philwin to represent him:

MR. CRISAFI: Well, the learned counsel that is with me now, it's his strategy that I disagree with which is just simply let the State prove their case. That's a very good schoolboy version of a defense but in this case—

THE COURT: Do you want Mr. Philwin to represent you or not?

MR. CRISAFI: No, thank you. I do not.

THE COURT: You'll have to try the case yourself with Mr. Philwin advising you as to the technicalities involved in this case.

Defendant represented himself during the ensuing five-day trial, with Philwin present as standby counsel. The two conferred on several occasions during trial. At the trial's conclusion, Philwin revealed that defendant repeatedly failed to heed his advice. The jury found defendant guilty of all charges, except unlawful possession of a handgun, and the trial court sentenced him to an aggregate term of forty-five years with twenty-two and one-half years of parole ineligibility.

–II–

■ The Sixth Amendment of the United States Constitution and article 1, paragraph 10 of the New Jersey Constitution guarantee a criminal defendant the right to counsel at trial. The Sixth Amendment provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, * * * to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulso-

ry process for obtaining witnesses in his favor; and to have the Assistance of Counsel for his defence.

In virtually identical language, article 1, paragraph 10 provides:

In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury; to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the assistance of counsel in his defense.

The Sixth Amendment "embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel." *Johnson v. Zerbst*, 304 *U.S.* 458, 462–63, 58 *S.Ct.* 1019, 1022, 82 *L.Ed.* 1461, 1465–66 (1938). Assistance of counsel is essential to ensuring fairness and due process in criminal prosecutions. *State v. Sugar*, 84 *N.J.* 1, 16, 417 *A.2d* 474 (1980). Without counsel, the right to a fair trial would mean little, for it is through counsel that defendants secure their other rights. *Kimmelman v. Morrison*, 477 *U.S.* 365, 377, 106 *S.Ct.* 2574, 2584, 91 *L.Ed.*2d 305, 320 (1986).

Defendants possess not only the right to counsel, but the right to dispense with counsel and to proceed *pro se. Faretta v. California*, 422 *U.S.* 806, 95 *S.Ct.* 2525, 45 *L.Ed.*2d 562 (1975). The *Faretta* Court recognized that when defendants choose to manage their own defense, they necessarily relinquish the benefits associated with representation by counsel. *Id.* at 835, 95 *S.Ct.* at 2541, 45 *L.Ed.*2d at 581. A defendant can exercise the right to self-representation only by first knowingly and intelligently waiving the right to counsel. *McKaskle v. Wiggins*, 465 *U.S.* 168, 173, 104 *S.Ct.* 944, 948, 79 *L.Ed.*2d 122, 130 (1984).

It is for the court to determine whether an accused has knowingly and intelligently waived that right and to establish the waiver on the record. *Zerbst, supra*, 304 *U.S.* at 465, 58 *S.Ct.* at 1023, 82 *L.Ed.* at 1467; *see State v. Buonadonna*, 122 *N.J.* 22, 35, 583 *A.2d* 747 (1991) (waiver of right to counsel

"necessitates an on-the-record inquiry of defendant by the trial court to insure that the waiver is made knowingly and voluntarily"). The defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta, supra,* 422 *U.S.* at 835, 95 *S.Ct.* at 2541, 45 *L.Ed.*2d at 582 (quoting *Adams v. United States ex rel. McCann,* 317 *U.S.* 269, 279, 63 *S.Ct.* 236, 242, 87 *L.Ed.* 268, 275 (1942)); *see State v. Davis,* 45 *N.J.* 195, 199, 212 *A.*2d 19 (1965) (finding defendant should be given appropriate warning of consequences of choice to proceed *pro se* ). Because of the importance of trial counsel, the United States Supreme Court has "imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial." *Patterson v. Illinois,* 487 *U.S.* 285, 298, 108 *S.Ct.* 2389, 2398, 101 *L.Ed.*2d 261, 276 (1988). Justice Black explained:

> To be valid such waiver [of trial counsel] must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.
>
> [*Von Moltke v. Gillies,* 332 *U.S.* 708, 724, 68 *S.Ct.* 316, 323, 92 *L.Ed.* 309, 321 (1948) (plurality opinion).]

The Appellate Division has consistently required trial judges to engage in a searching inquiry with defendants seeking to proceed *pro se. See, e.g.,* 247 *N.J.Super.* at 495–96, 589 *A.*2d 1033 (court must inform defendant of magnitude of charges and penalties); *State v. Slattery,* 239 *N.J.Super.* 534, 547, 571 *A.*2d 1314 (1990) (requiring searching and painstaking inquiry, including legal elements of crimes and possible lesser-included offenses); *State v. Kordower,* 229 *N.J.Super.* 566, 577–78, 552 *A.*2d 218 (1989) (requiring penetrating and comprehensive inquiry when informing defendant of incarceration exposure and

technical difficulties he or she might encounter in acting as his or her own attorney); *State v. Lach*, 213 *N.J.Super.* 466, 469–71, 517 *A.*2d 882 (1986) (holding court must explain range of allowable punishments, possible defenses and circumstances in mitigation, and dangers and disadvantages inherent in defending oneself); *State v. Guerin*, 208 *N.J.Super.* 527, 535, 506 *A.*2d 743 (1986) (holding court must conduct penetrating and comprehensive inquiry of defendant); *State v. Cole*, 204 *N.J.Super.* 618, 624–25, 499 *A.*2d 1030 (1985) (stating that searching inquiry should include statutory offenses included within charges and range of allowable punishments thereunder); *State v. Abbondanzo*, 201 *N.J.Super.* 181, 185, 492 *A.*2d 1077 (1985) (requiring court to advise *pro se* defendant of incarceration exposure before determining there has been effective waiver of counsel).

██ To ensure that a waiver of counsel is knowing and intelligent, the trial court should inform *pro se* defendants of the nature of the charges against them, the statutory defenses to those charges, and the possible range of punishment. *United States v. Padilla*, 819 *F.*2d 952, 957 (10th Cir.1987); *United States v. McDowell*, 814 *F.*2d 245, 251 (6th Cir.) (using model guidelines from 1 *Bench Book for United States District Judges* 1.02–2 to –5 (3d ed. 1986)), *cert. denied*, 484 *U.S.* 980, 108 *S.Ct.* 478, 98 *L.Ed.*2d 492 (1987). The colloquy between the court and the defendant will test the defendant's understanding of the implications of the waiver, and will provide appellate courts with an objective basis for review. *Strozier v. Newsome (Strozier II)*, 926 *F.*2d 1100, 1104 (11th Cir.), *cert. denied*, —— *U.S.* ——, 112 *S.Ct.* 350, 116 *L.Ed.*2d 289 (1991); *People v. Sawyer*, 57 *N.Y.*2d 12, 21, 453 *N.Y.S.*2d 418, 423, 438 *N.E.*2d 1133, 1138 (1982), *cert. denied*, 459 *U.S.* 1178, 103 *S.Ct.* 830, 74 *L.Ed.*2d 1024 (1983).

██ In general, the court should also inform defendants of the technical problems they may encounter in acting as their own counsel and of the risks they take if their defense is

unsuccessful. *United States v. Welty*, 674 *F*.2d 185, 188 (3d Cir.1982). Further, the court should inform the defendants that they must conduct their defense in accordance with the relevant rules of criminal procedure and evidence, that a lack of knowledge of law may impair their ability to defend themselves, and that their dual role as attorney and accused might hamper the effectiveness of their defense. *McMahon v. Fulcomer*, 821 *F*.2d 934, 945 (3d Cir.1987); *Welty, supra*, 674 *F*.2d at 188. Also, the court should explain to the defendants the difficulties in acting as their own counsel and should specifically advise the defendants that it would be unwise not to accept the assistance of counsel. *United States v. Moya–Gomez*, 860 *F*.2d 706, 733 (7th Cir.1988), *cert. denied sub nom. Esteves v. United States*, 492 *U.S.* 908, 109 *S.Ct.* 3221, 106 *L.Ed*.2d 571 (1989).

We agree with the Appellate Division, 247 *N.J.Super.* at 496, 589 *A*.2d 1033, that the record does not demonstrate that the trial court engaged in the necessary colloquy. The court told defendant that "he's going to be subject as any other person trying a case to the Rules and Regulations and the law as to the trial of this procedure" and repeatedly asked defendant to choose between his assigned attorney and proceeding *pro se.* It, however, did not notify him on the record of the charges against him, possible sentences, and the dangers of proceeding without counsel.

-III-

In the general run of cases, the failure of the trial court to advise the defendant would compel reversal of a conviction. That failure, however, does not end our inquiry whether a defendant has waived counsel knowingly and intelligently. The purpose of giving a defendant an extensive warning is to ensure that he or she understands the consequences of the waiver. Thus, the ultimate focus must be on the defendant's actual understanding of the waiver of counsel. *United States v. Balough*, 820 *F*.2d 1485, 1487 (9th Cir.1987); *Fitz-*

*patrick v. Wainwright,* 800 *F.*2d 1057, 1065, *reh'g denied,* 806 *F.*2d 1070 (11th Cir.1986); *Commonwealth v. Barnes,* 399 *Mass.* 385, 504 *N.E.*2d 624, 628 (Mass.1987). In the exceptional case, if the record indicates that the defendant actually understood the risks of proceeding *pro se,* a waiver may suffice. *United States v. Maldonado–Rivera,* 922 *F.*2d 934, 977 (2d Cir.1990), *cert. denied,* —— *U.S.* ——, 111 *S.Ct.* 2858, 115 *L.Ed.*2d 1026 (1991); *Moya–Gomez, supra,* 860 *F.*2d at 733; *Meyer v. Sargent,* 854 *F.*2d 1110, 1114 (8th Cir.1988); *Harding v. Lewis,* 834 *F.*2d 853, 857 (9th Cir.1987), *cert. denied,* 488 *U.S.* 871, 109 *S.Ct.* 182, 102 *L.Ed.*2d 151 (1988); *Padilla, supra,* 819 *F.*2d at 958; *Fitzpatrick, supra,* 800 *F.*2d at 1065; *United States v. Hafen,* 726 *F.*2d 21, 25 (1st Cir.), *cert. denied,* 466 *U.S.* 962, 104 *S.Ct.* 2179, 80 *L.Ed.*2d 561 (1984); *Cole, supra,* 204 *N.J.Super.* at 624–25, 499 *A.*2d 1030. This limited exception, when the absence of a searching inquiry will not undermine the waiver of counsel, applies only in rare cases. *Strozier II, supra,* 926 *F.*2d at 1105; *United States v. Fant,* 890 *F.*2d 408, 409 (11th Cir.1989), *cert. denied,* 494 *U.S.* 1038, 110 *S.Ct.* 1498, 108 *L.Ed.*2d 633 (1990); *United States v. Wadsworth,* 830 *F.*2d 1500, 1504 (9th Cir.1987); *Balough, supra,* 820 *F.*2d at 1488.

 Defendant presents this Court with just such a rare case. The record demonstrates that he is a court-wise criminal who fully appreciated the risks of proceeding without counsel, and that he decided to proceed *pro se* with his eyes open. *Faretta, supra,* 422 *U.S.* at 835, 95 *S.Ct.* at 2541, 45 *L.Ed.*2d at 582. Defendant's background and experience support the conclusion that he knew the pitfalls of trying his own case. *See Zerbst, supra,* 304 *U.S.* at 464, 58 *S.Ct.* at 1023, 82 *L.Ed.* at 1466 ("The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."). He was fifty-seven years old at the time of the trial and had extensive experience with the criminal justice system.

His adult criminal record, which includes convictions for grand larceny, grand theft, and petty larceny, also includes a rape conviction in 1960 in California and a sexual abuse conviction in 1971 in New York. *See Government of the Virgin Islands v. James,* 934 *F.*2d 468, 474 (3d Cir.1991) (defendant, tried and convicted twice before, knowingly and intelligently waived counsel); *Stozier v. Newsome (Strozier* I), 871 *F.*2d 995, 999 (11th Cir.1989) (deeming prior criminal record relevant to determination of validity of waiver); *Moya–Gomez, supra,* 860 *F.*2d at 736 (deeming defendant, who was "no stranger to the criminal justice system," waived counsel knowingly and intelligently); *United States v. Bailey,* 675 *F.*2d 1292, 1302 (D.C.Cir. 1982) (fact defendant had previously been convicted of felony indicated he had some knowledge of relevant law and courtroom procedure), *cert. denied sub nom. Walker v. United States,* 459 *U.S.* 853, 103 *S.Ct.* 119, 74 *L.Ed.*2d 104 (1982); *Cole, supra,* 204 *N.J.Super.* at 624, 499 *A.*2d 1030 (fifty-five-year-old defendant with long and serious prior criminal record had experience and familiarity with criminal law, indicating knowing and intelligent waiver of counsel). In 1958, defendant had represented himself before a California jury on a rape charge and had obtained an acquittal. *See Fant, supra,* 890 *F.*2d at 410 (defendant who had represented himself successfully in prior criminal trial knowingly and intelligently waived counsel); *Wiggins v. Procunier,* 753 *F.*2d 1318, 1320 (5th Cir.1985) (defendant previously tried and convicted while representing himself made knowing waiver of counsel). According to his presentence report, defendant, while incarcerated, took courses at the University of California at Berkeley, which awarded him a Bachelor's degree in Business Law after his release. The report also indicated that defendant had taken additional course work at Brooklyn College. *See Fitzpatrick, supra,* 800 *F.*2d at 1066 (valid waiver by middle-aged defendant who graduated from high school, took college courses, and taught high school); *Hafen, supra,* 726 *F.*2d at 25 (college graduate with two years of law school knowingly and intelligently waived counsel);

*Bailey, supra,* 675 *F.*2d at 1302 (three years of studying law at Leavenworth factor in finding knowing and intelligent waiver). In his brief, defendant now denies that he studied at either institution. We cannot resolve the difference on the record before us. Our reading of the record, however, indicates that the defendant, even if he did not pursue college-level courses, is articulate and artful.

Although the trial court failed to inform defendant of the charges against him, the sentencing alternatives, and specific pitfalls of proceeding *pro se,* the record indicates that defendant was sufficiently informed on those issues to waive counsel. Defendant was aware of the charges and the potential penalties. He indicated to the trial court that during his arraignment in Texas and before his extradition to New Jersey he had notice of the charges. *See United States v. McFadden,* 630 *F.*2d 963, 972 (3d Cir.1980) (defendant made aware of charges and penalties in prior appearances before magistrate), *cert. denied,* 450 *U.S.* 1043, 101 *S.Ct.* 1763, 68 *L.Ed.*2d 241 (1981). On two occasions, defendant discussed with the trial court the number of counts in the indictment. Defendant listed the charges against him in his application to the Public Defender and in his subsequent motion for assignment of counsel. Finally, while conducting cross-examination of Carol Terranova, who had testified for the State, he demonstrated his ability to determine the maximum sentence to which he was exposed:

THE COURT: The question is do you know how much time you may face as a result of the charges against you?

THE WITNESS: No, I don't.

Q. [MR. CRISAFI]: This lawyer, excuse my back, please, this lawyer never told you what the consequences of this alleged—

A. [THE WITNESS]: He told me there could be a lot of possible consequences, yes.

Q. [MR. CRISAFI]: We have sections that you could just look up that says this crime incurs this much in this state. It is specified—

MR. LAURINO [the Prosecutor]: Objection.

Q. [MR. CRISAFI]: —mimimum, maximum—

Defendant was also aware of his potential defenses and of available trial strategies. His numerous colloquies with the

court indicate that he had devised his own trial strategy. He also discussed his defense with Mr. Fullilove, Mr. Blasi, and Mr. Philwin, who served as his standby counsel during the trial. Defendant thus received competent legal advice before proceeding *pro se*. In fact, his basis for rejecting the services of the three attorneys was that he did not agree with their trial strategy.

An experienced trial attorney might have developed a different strategy. For his part, defendant demonstrated a passing familiarity with courtroom procedure. He argued several motions, including a motion to reduce bail and several discovery motions. Before trial, he specifically referred to a discovery proceeding as a "Rule 55" hearing and requested a list of prosecutor's witnesses under "Rule 3:13.3(a)." During the trial, he asked for a "Rule 8" hearing on Terranova's motives in turning State's witness, and requested the court to instruct the jury on lesser-included offenses.

The court informed defendant that like a defense attorney, he would be bound by the Rules of criminal procedure. It also assured him of the availability of standby counsel. *See James, supra*, 934 *F.*2d at 472–73 (finding "most significant[ ]" in determining valid waiver that defendant had standby counsel to answer any questions during trial); *Strozier* II, *supra*, 926 *F.*2d at 1105 (appointment of standby counsel and extent to which counsel aided defendant factors in determining validity of waiver). The record indicates that counsel assisted defendant at both the pre-trial and trial stages. Mr. Philwin explained to defendant the purpose of a *Sands* hearing concerning the admission of his prior convictions and advised him about obtaining witness lists. Further, Mr. Philwin discussed with defendant the contents of his opening statement. He also advised him on the inadvisability of conducting cross-examination and re-cross of every witness, advice that defendant ignored. Mr. Philwin also reviewed with defendant the admissibility of the prosecution's physical evidence, such as photos of the victim, her sunglasses, defendant's cigarettes, and his business card.

Thus, Mr. Philwin substantially informed defendant about "whatever pitfalls he faces." *See Moya–Gomez, supra,* 860 *F.*2d at 736 (attorney's statement that he had warned defendant of risks involved weighed heavily on side of finding valid waiver).

We disagree with the Appellate Division's unqualified assertion that defendant "never expressly stated that he desired to waive his right to counsel, but instead argued he was being deprived of that right." 247 *N.J.Super.* at 497, 589 *A.*2d 1033. The trial court repeatedly gave defendant the choice between representation by trained counsel and proceeding *pro se.* Defendant elected to represent himself. See *supra* at 492, 589 *A.*2d 1033 ("All right, your Honor, then I will represent myself."). When the alternative is representation by the Public Defender, choosing to proceed *pro se* constitutes a voluntary waiver of counsel. *United States v. Robinson,* 913 *F.*2d 712, 715–17 (9th Cir.1990), *cert. denied,* — *U.S.* —, 111 *S.Ct.* 1006, 112 *L.Ed.*2d 1089 (1991); *Moya–Gomez, supra,* 860 *F.*2d at 739; *see Adams v. Carroll,* 875 *F.*2d 1441, 1445 (9th Cir. 1989) (holding request to proceed without counsel unequivocal where defendant wishes to invoke right only as alternative to appointment of particular defense attorney). A defendant does not enjoy an unencumbered right to counsel of his or her choice. *Wheat v. United States,* 486 *U.S.* 153, 159, 108 *S.Ct.* 1692, 1697, 100 *L.Ed.*2d 140, 148 (1988). Likewise, defendant did not have the right to counsel who would blindly follow his instructions. *McQueen v. Blackburn,* 755 *F.*2d 1174, 1178 (5th Cir.), *cert. denied,* 474 *U.S.* 852, 106 *S.Ct.* 152, 88 *L.Ed.*2d 125 (1985).

The record leads us to conclude that defendant sought to manipulate the system by wavering between assigned counsel and self-representation and by asserting violations of his right to counsel while rejecting every attorney assigned to his case. As we noted in *State v. McCombs,* 81 *N.J.* 373, 378, 408 *A.*2d 425 (1979), a "defendant cannot have it both ways—

that is, he cannot refuse to represent himself but at the same time reject the services of assigned counsel." If a defendant has good cause for substituting counsel, the trial court should entertain a request. Disagreement over defense strategy, however, does not rise to the level of good cause. *Padilla, supra,* 819 *F.*2d at 956. The choice between proceeding with an attorney with whom he or she disagrees or proceeding *pro se* can produce a valid waiver of counsel. *See United States v. Grosshans,* 821 *F.*2d 1247, 1251 (6th Cir.) (defendant who disagreed with appointed counsel's beliefs regarding legality of tax system not forced to proceed *pro se* ), *cert. denied,* 484 *U.S.* 987, 108 *S.Ct.* 506, 98 *L.Ed.*2d 505 (1987); *United States v. Weninger,* 624 *F.*2d 163, 166–67 (10th Cir.) (refusal of defendant to hire counsel unless lawyer agreed with his views on invalidity of tax laws deemed knowing and intelligent waiver), *cert. denied,* 449 *U.S.* 1012, 101 *S.Ct.* 568, 66 *L.Ed.*2d 470 (1980); *State v. DeWeese,* 117 *Wash.*2d 369, 816 *P.*2d 1, 4 (1991) ("When an indigent defendant fails to provide the court with legitimate reasons for the assignment of substitute counsel, the court may require the defendant to either continue with current appointed counsel or to represent himself.").

At some point, a trial court confronted with a wily defendant may consider the efficient administration of criminal justice and force a defendant to choose between appointed counsel and proceeding *pro se. United States v. Gallop,* 838 *F.*2d 105, 110–11 (4th Cir.), *cert. denied,* 487 *U.S.* 1211, 108 *S.Ct.* 2858, 101 *L.Ed.*2d 895 (1988); *see United States v. Gipson,* 693 *F.*2d 109, 112 (10th Cir.1982) (defendant rejected three unbiased competent lawyers without good reason), *cert. denied,* 459 *U.S.* 1216, 103 *S.Ct.* 1218, 75 *L.Ed.*2d 455 (1983). Defendant's cat-and-mouse games with the court demonstrate that he knowingly and intelligently decided to waive counsel. The failure to inform him fully of the consequences of proceeding without an attorney does not require reversal of his conviction. *United States v. Tompkins,* 623 *F.*2d 824, 828 (2d Cir.1980). Permitting so seasoned a criminal to evade conviction for the asserted

reason that he had not intelligently and competently waived counsel would be a "perversion of the administration of criminal justice." *Cole, supra,* 204 *N.J.Super.* at 625–26, 499 *A.*2d 1030.

Defendant differs from other defendants whose convictions have been overturned due to the absence of an adequate colloquy between the court and the defendants. In *Slattery, supra,* 239 *N.J.Super.* at 548, 571 *A.*2d 1314, the defendant was not well-educated or highly-sophisticated and had an IQ of 86. He was not a career criminal, and the record reflected that the defendant was wholly bewildered by the proceedings. *Ibid.* The defendant in *Kordower, supra,* 229 *N.J.Super.* at 580, 552 *A.*2d 218, had no criminal experience, openly declared she was "inept," and was faced with the daunting task of laying foundation for psychiatric testimony. In *Guerin, supra,* 208 *N.J.Super.* at 529, 506 *A.*2d 743, the defendant had serious psychological problems that brought into question his overall competence; while in *Lach, supra,* 213 *N.J.Super.* at 471, 517 *A.*2d 882, the defendant was forced to proceed *pro se* largely because he had failed to respond to the initial municipal notice informing him of his right to appointed counsel.

The defendant here is more like the defendant in *Cole,* where the court upheld the waiver of counsel. 204 *N.J.Super.* 618, 499 *A.*2d 1030. Like defendant, Cole was in his mid-fifties and had an extensive criminal record that covered decades. *Id.* at 624, 499 *A.*2d 1030. Also, like defendant, Cole was court-wise and attempted to create the impression that, despite his refusal to accept appointed counsel, he had been denied his right to an attorney. *Id.* at 624–25, 499 *A.*2d 1030.

–IV–

■ In overturning defendant's conviction, the Appellate Division conditioned its remand for a new trial. The condition was that if after inquiry by the trial court defendant chose to proceed *pro se,* "his election to do so must be understood as a

ratification of the previous trial." 247 *N.J.Super.* at 499, 589 *A.*2d 1033. In effect, the Appellate Division deprived defendant of the right to proceed *pro se.* We surmise that the court imposed that condition to prevent defendant from further manipulating the criminal justice system. Our reinstatement of defendant's conviction renders unnecessary extensive analysis of the conditional deprivation of defendant's right to appear *pro se.* We note, however, that the condition would violate defendant's right to conduct his own defense. *Faretta, supra,* 422 *U.S.* at 817, 95 *S.Ct.* at 2532, 45 *L.Ed.*2d at 872. If a defendant knowingly waives his or her right to counsel, the court should not force counsel on him or her.

The judgment of the Appellate Division is reversed, and defendant's conviction and sentence are reinstated.

*For reversal and reinstatement*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLACK, O'HERN, GARIBALDI, and STEIN—7.

*Opposed*—None.