872 A.2d 1087 (2005)
377 N.J. Super. 331
STATE of New Jersey, Plaintiff-Respondent,
v.
Miguel FIGUEROA, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued April 12, 2005.
Decided May 6, 2005.
*1088 Stephen W. Kirsch, Assistant Deputy Public Defender, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Mr. Kirsch, of counsel and on the brief).
Deborah Bartolomey, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General, attorney; Joie Piderit, Deputy Attorney General, of counsel and on the brief; Ms. Bartolomey, of counsel and on the supplemental brief).
Before Judges STERN, COBURN and S.L. REISNER.
The opinion of the court was delivered by
COBURN, J.A.D.
After losing his motion to represent himself in this capital case, Miguel Figueroa was placed on trial before a jury, which found him guilty of purposeful or knowing murder, felony murder, aggravated sexual assault, and sexual assault. There was no penalty phase because the jury did not unanimously find that he committed the murder by his own conduct, and he received an aggregate prison sentence of life plus twenty years with forty-five years of parole ineligibility. The dispositive issue is whether the trial judge improperly denied Figueroa's motion to represent himself at trial.

I
Over six months before trial, a hearing occurred on Figueroa's request to represent himself. Appearing with him were the two attorneys assigned by the Public Defender. The judge's initial questioning revealed that Figueroa, who was over thirty years old, had a ninth grade education and that he was particularly focused on conducting his own cross-examination of witnesses, although he had never done so, and was unfamiliar with the trial process.
As the questioning continued, Figueroa admitted that he had never read a DNA report before or cross-examined a DNA expert, although the DNA evidence was critical in this case. He recognized that "[his] life [was] on the line," but firmly believed that he knew his "case and [his] discovery better than anybody in here." When asked whether he had tried to "enlighten" his attorneys about his case, this colloquy occurred:
THE DEFENDANT: Enlighten them. I just told you. I want, I want to do the cross-examining myself. I don't know, what would be the problem with me doing the cross-examining? If they want to be there, represent me right next to me, they can but I want to do the cross-examine. What's so hard about me given the opportunity to cross-examine?
THE COURT: Because I want to be able to have you represented effectively. I don't believe that you fully understand what rights you give up when you say I want to waive the right to counsel. Do you understand that?
THE DEFENDANT: I understand that.... What I'm trying to say is I have no problem with their representation, you understand? But I would like to be able to cross-examine, to speak out, you know, do the cross-examining on the witnesses. Why can I not do that? They can be in there in case there's something I have no knowledge of, you know, to represent me but I would like to do the cross-examination. I want to do it.
THE COURT: And you don't feel it could be effectively done by you coordinating with counsel?
THE DEFENDANT: No. I would like to do it myself.
After acknowledging that defendant appeared to be acting voluntarily, the *1089 judge expressed doubt about whether the waiver was knowing and intelligent, and then suggested that Figueroa's request was "more an emotional response." In response, Figueroa said:
It's not emotional. I'm perfectly, I'm perfectly fine when it comes to emotional. I'm the one sitting here facing a capital murder case. Does it look like I'm emotional? I'm not emotional. I want to be able to represent myself and speak out. What's so hard about me speaking out?
After expressing concern about whether Figueroa understood the difference between testifying, arguing, and cross-examining, the judge then questioned him on the subject of mitigating and aggravating factors, demonstrating that Figueroa was confused about them. Figueroa acknowledged that his knowledge on those subjects was limited, but added "I guess I got time to go to the law library and study, don't I?" and "If I'm going to represent myself, then I be going back to prepare myself, won't I?"
The judge's ruling denying the motion included these observations:
I believe you voluntarily want to give up your right to counsel but I don't believe you knowingly and intelligently want to give up. [ ] I think you're acting more from emotion than you are from intellect.
You have a ninth grade education and although you do appear quite articulate, I still don't believe you fully comprehend what it is counsel does for you so you can't understand what it is you're giving up. Despite the fact you may have had some contact with the criminal justice system historically, I would feel more comfortable that you knowingly gave up your right had you been through a trial at some point in time in your past but you've never been through a trial. ... Your mental capacity's never been a question. I don't believe that you fully comprehend the defenses or possible defenses available to you or avenues of defense.
[(Emphasis added.)]
In addition, the judge expressed concern about Figueroa's inability to effectively cross-examine the prosecutor's DNA expert, particularly since the defense lawyers had stated that there would be no defense DNA expert, and his lack of knowledge about procedure. Finally, the judge expressed concern about Figueroa's confusion on the meaning of mitigating and aggravating factors.

II
Criminal defendants have a constitutional right "to dispense with counsel and to proceed pro se." State v. Crisafi, 128 N.J. 499, 509, 608 A.2d 317, 323 (1992) (citing Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). Exercise of the right depends on a knowing and intelligent waiver. Ibid. (citing McKaskle v. Wiggins, 465 U.S. 168, 173, 104 S.Ct. 944, 948, 79 L.Ed.2d 122, 130 (1984)). The right applies as well in the context of capital cases, with two provisos: standby counsel must be appointed, and if defendant refuses to prove mitigating factors in the penalty phrase, standby counsel must do so. State v. Reddish, 181 N.J. 553, 603-06, 859 A.2d 1173, 1203-05 (2004).
Before ruling, a trial judge must engage in a searching inquiry, which Crisafi said should include explanation of the nature of the charges, possible defenses, and the range of punishment; the technical problems *1090 arising from self-representation, and the risks taken if the defense is unsuccessful; the requirement that the defense be presented in compliance with the rules of criminal procedure and evidence; and the inadvisability of proceeding without assistance of counsel. Crisafi, supra, 128 N.J. at 510-12, 608 A.2d at 323-24. In Reddish, the Court expanded on the nature of the required inquiry:
We encourage trial courts to explore subjects that are inherent in, or offshoots of, those identified in Crisafi. By way of illustration, those additional areas would include whether defendant will experience difficulty in separating his roles as defendant and counsel; whether defendant understands that he not only has the right not to testify, but also the right not to incriminate himself in any manner; whether he understands that he could make comments as counsel from which the jury might infer that he had knowledge of incriminating evidence (and the difficulty in avoiding such comments); and whether he fully understands that if he crosses the line separating counsel from witness, he may forfeit his right to remain silent and subject himself to cross-examination by the State.
In its discussion with defendant, the trial court also must advise defendant that if the court allows him to represent himself, he will thereby waive any and all later claims that his self-representation constituted ineffective assistance of counsel. Further, as with all areas of inquiry regarding the decision to waive counsel, the trial court must question defendant to ascertain whether he actually understands the nature and consequences of his waiver. The trial court must explore fully the bona fides of a defendant's claim of "knowingness." It must determine whether a defendant's "understanding" is real or feigned. Courts must be sensitive, as this trial court was, to attempts by a defendant to claim "knowingness" merely to assuage the court's concerns about the consequences of pro se representation. To that end, beyond a defendant's mere yes or no response, the court must make appropriate credibility determinations bottomed on specific facts, observations, and conclusions. The court must ask appropriate open-ended questions that will require defendant to describe in his own words his understanding of the challenges that he will face when he represents himself at trial. For example, a defendant may be required to explain what difficulties he believes he will confront or create when he examines or cross-examines witnesses. Accordingly, the trial court must conduct separate inquiries concerning waiver of counsel before both the guilt and penalty phases in the event defendant seeks to appear pro se in both phases. The court should adjust its questions and analyses to meet the circumstances and exigencies in each instance. Its inquiry before the penalty phase may warrant questions beyond those posed before the guilt phase.
We stress that we are not requiring defendants to "have the skill and experience of a lawyer in order competently and intelligently to choose self-representation." Faretta, supra, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581-82. Nor are we even requiring any "technical legal knowledge." Id. at 836, 95 S.Ct. at 2541, 45 L.Ed.2d at 582.
As our opinion recognizes, a defendant who waives counsel jeopardizes his constitutional right against self-incrimination, and, thus, his liberty. The requirement *1091 that a defendant's waiver of counsel be "knowing" would ring hollow if courts did not take extensive prophylactic measures to assess a defendant's understanding of those rights. In offering this additional guidance, we have confidence that our courts will exercise sound discretion in determining whether the waiver is knowing and intelligent given the unique circumstances of each case.
[181 N.J. at 593-95, 859 A.2d at 1197-98 (internal citations omitted).]
The judge's inquiry fell well short of the searching inquiry required by Crisafi and Reddish. In addition, Figueroa's comments suggested that he was interested in hybrid representation, reserving to himself only the conduct of cross-examination, while leaving others matters to his counsel. We have noted that "hybrid representation may be foreclosed and is to be avoided wherever possible[,]" State v. Roth, 289 N.J.Super. 152, 165-66, 673 A.2d 285, 292 (App.Div.), certif. denied, 146 N.J. 68, 679 A.2d 655 (1996) (citations omitted), but may be granted in the trial judge's discretion. State v. McCleary, 149 N.J.Super. 77, 80, 373 A.2d 400, 401 (App.Div.), certif. denied, 75 N.J. 26, 379 A.2d 257 (1977). In this case it was a subject that required exploration under the principles described in Crisafi and Reddish.
With these principles in mind, we return to the judge's opinion. The record supports his findings only to the extent that he determined that Figueroa was acting voluntarily and was articulate. The record provides no support for the judge's finding that Figueroa was moved by emotion rather than intellect. But, and this is critical, the judge's finding that Figueroa failed to adequately "comprehend what it is counsel does," and the "defenses or possible defenses available," must be seen as arising from the judge's failure to meet his duty of explaining those matters, as is required by Reddish, which was decided after this case was over, and Crisafi. The judge's concern, we should add, about Figueroa's confusion about mitigating factors was irrelevant for two reasons. There must be "separate inquiries concerning waiver of counsel before both the guilt and penalty phases in the event defendant seeks to appear pro se in both phases[,]" Reddish, supra, 181 N.J. at 595, 859 A.2d at 1198; and even if a defendant is permitted to represent himself in the penalty phase, standby counsel has the obligation of presenting mitigating evidence if defendant fails or refuses to do so. Id. at 605, 859 A.2d at 1204.
As the Court re-iterated in Reddish, a defendant who wants to proceed pro se need not "`have the skill and experience of a lawyer in order competently and intelligently to choose self-representation.'" Id. at 595, 859 A.2d at 1198 (citation omitted). "Nor [need he have] any `technical legal knowledge.'" Ibid. (citation omitted). While Figueroa obviously lacked the indicated skills and knowledge, the trial judge was wrong in denying him the right to proceed pro se on those grounds, which is, we believe, what he did.
Reversed and remanded for trial.