**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2495-17

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KIRK J. PUGH, a/k/a
HUGH PUGH,

     Defendant-Appellant.

_____

Submitted May 26, 2020 – Decided July 13, 2020
Remanded by Supreme Court April 16, 2021
Resubmitted June 10, 2021 – Decided August 10, 2021

Before Judges Sabatino, Sumners and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 15-02-0127.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique D. Moyse, Designated Counsel, on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Joie D. Piderit, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

This matter returns to us after a summary remand from the Supreme Court, State v. Pugh, 246 N.J. 142 (2021), directing that we reconsider our decision in light of the Court's recent decision in State v. Outland, 245 N.J. 494 (2021). We incorporate by reference the factual and procedural history set forth in our prior unpublished opinion, see State v. Pugh, No. A-2495-17 (App. Div. July 13, 2020), and recount only those facts and trial proceedings relevant to the issue decided in Outland and that decided in our opinion: whether the trial court correctly denied defendant's request to proceed pro se.

I.

On October 18, 2014, the Edison Police Department received a phone call regarding an incident at an Edison gas station. A responding detective reviewed surveillance video footage provided by the owner, and, as the detective later testified, observed a male inside a vehicle getting gas. As the attendant removed the gas nozzle from the vehicle's tank, "the individual g[ot] out of the car and as he approache[d] [the attendant], he appear[ed] to be holding . . . a knife in his right hand."

The detective then observed the individual "grab[] the attendant with his left hand and push him down to the ground." He testified that "you can see him

2

. . . go through the victim's pockets with his left hand before getting back in the car and fleeing the scene." The detective was able to read the front license plate of the vehicle from the surveillance video, which eventually led to defendant's arrest.

On February 3, 2015, a grand jury returned an indictment charging defendant with: 1) first-degree robbery, N.J.S.A. 2C:15-1; 2) second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); 3) third-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(d); 4) fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); and 5) obstructing administration of law, N.J.S.A. 2C:29-1(b).

On January 27, 2017, defendant orally moved to proceed pro se. At a hearing on February 16, 2017, the court began an inquiry consisting of "an open-ended discussion" to determine whether defendant was knowingly and intelligently waiving his Sixth Amendment right to counsel. When asked whether he had ever studied law, defendant indicated that he completed a program for a paralegal certificate at Northern State Prison. The court also extensively questioned defendant regarding the elements of his charges, defenses, and potential sentence if convicted.

A-2495-17

In response to the court's colloquy, defendant detailed the elements of first-degree robbery as "bodily injury or possession of a weapon with intent to do bodily harm" in connection with a "theft by unlawful taking." And, with regard to aggravated assault, defendant understood that the offenses consisted of intent "to do bodily injury where the person needs medical attention." Throughout the court's questioning, defendant acknowledged that although he did not possess "the experience and knowledge of lawyers," he would continue to study and reference books and statutes at trial. Defendant also expressed his understanding that the State's burden was beyond a reasonable doubt, though he struggled to define precisely that term.

With regard to any available defenses, defendant noted that the State could not establish the elements of the charges brought against him. As to his range of punishment were he to be convicted, defendant stated that although the prosecutor sought a discretionary persistent offender extended term, he did not qualify because "it's a ten-year parameter [for] . . . the last time you were released, or the last time you committed a crime." He stated that he was unsure of the possible sentence for first-degree robbery, but that he could reference the statutes for that answer. He also informed the court that he verified he was not extended-term eligible or three-strikes eligible.

4

At a subsequent hearing on March 7, 2017, the court continued its inquiry and questioned defendant regarding how his lack of knowledge of the New Jersey Court Rules and the New Jersey Rules of Evidence would affect his representation. In response, defendant stated that with the assistance of side counsel, "I think I would do just fine, very fine," but acknowledged that his lack of understanding of the applicable rules could impair his ability to present certain witnesses or facts to the jury. Defendant further stated that he understood that "there are restrictions on what you can say in openings or arguments to a jury" and "on the way questions are asked of witnesses" and that side counsel would assist him with technical issues that arise in connection with trial.

When asked whether he understood that the dual role of counsel and defendant "may hamper [his] effectiveness in presenting [his] defense," defendant stated that he would "be limited to certain things [he] can say or present" so that he was not perceived as testifying on his own behalf. As to his "understanding of the negative effect" that proceeding pro se would "have on [his] right to remain silent and the privilege against self-incrimination," defendant expressed his intention not to take the stand and that he would "minimize the risks by sticking strictly to the facts of the case, sticking to all the paperwork, all the discovery that [he had] received."

A-2495-17

When the court asked defendant about technical issues that he may encounter considering "the necessity to comply with the court rules and the rules of evidence," he replied: "[r]eally, I see no problem, Your Honor. I see no problem. If I ask the proper questions and stay within the guidelines, like I say, of the rules, not doing anything improper, I should have no difficulties." He also acknowledged the potential of being held in contempt or subject to other sanctions if he engaged in improper conduct before the court.

The court also questioned defendant regarding specific legal principles. By way of example, defendant expressed his intention to call character witnesses to establish that he had a habit of "going to work and . . . caring for [his] sister" and as such he could not have been at the scene of the robbery. When the court informed defendant that such statements were "not going to work" because "that's not what habit and routine is about," defendant responded "[y]eah, it is." Defendant also indicated that he did not know how to subpoena witnesses and that he would be "limited to certain things" that he was permitted to say during opening and closing arguments, without providing specifics.

The court concluded that defendant did not "have the understanding of the evidence rules, the evidence concepts, or the rules of court . . . to adequately . . . represent" himself. In this regard, it found that defendant did not "indicate any

6

A-2495-17

kind of substantive understanding of the rules and of the law that someone representing themselves would need . . . to be able to . . . adequately represent[] themselves in court." The court stated its view that defendant would be unable to put forth a defense "because there are many concepts [which] [he] [does not] . . . understand about the substantive law, the evidential rulings, the court rules, [and] the evidential concepts to be able to move this case forward . . . without making a mockery of justice." As such, the court determined that it was uncomfortable with defendant's ability to "knowingly, intelligently, and voluntarily exercise [his] right to represent [him]self" and accordingly denied defendant's motion.

The case proceeded to trial between April 25, 2017 and May 4, 2017. At the close of its case, the State voluntarily dismissed the obstructing administration of law count due to insufficient evidence. The jury convicted defendant of third-degree theft and returned not guilty verdicts on the remaining counts. The court sentenced defendant to eight years imprisonment with four years of parole ineligibility, and imposed applicable fees and penalties.

On appeal, we affirmed defendant's conviction, sentence, and the court's decision denying his application to proceed pro se, finding "defendant's responses to many of the court's questions were generalized and sometimes

7

nonsensical." Pugh, slip op. at 46. In particular, we concluded his "responses clearly indicated that defendant was not, in fact, fully aware of the breadth and severity of the dilemmas involved in presenting a defense as the accused," and further explained:

> [A]t times, defendant provided answers to the court's questioning that indicated some degree of knowledge and willingness. By way of example, he indicated partial familiarity with the elements, defenses, and sentencing risks in relation to his charges, as shown by his definition of the elements of first-degree robbery, although it appeared that defendant read a number of his responses from a book on the table in front of him, including at one point reciting verbatim a portion of the table of contents of the New Jersey Rules of Evidence. And, he stated that he would rely on standby counsel to mitigate the risks regarding technical issues and his compliance with the Rules (although he vacillated on whether current counsel would remain in that role). We are satisfied, however, that the court reviewed defendant's responses comprehensively and consistent with [State v. Reddish, 181 N.J. 553 (2004)]. Again, we conclude from our review of the transcripts that the court did not abuse its discretion in denying defendant's application, as it appears that defendant largely feigned or exaggerated his understanding of the risks and complications of pro se representation and was not proceeding "with eyes open." [Id.] at 592 (citing [Faretta v. California, 422 U.S. 806, 835 (1975)]).
>
> [Pugh, slip op. at 46-47.]

A-2495-17

II.

The Supreme Court, as noted, remanded for our reconsideration in light of Outland, 245 N.J. 494. See Pugh, 246 N.J. at 142. For the reasons that follow, and considering Outland, we reverse the court's determination denying defendant's request to proceed pro se and remand for a new trial.

In Outland, the defendant filed a motion to proceed pro se. 245 N.J. at 499. The judge held a hearing three days before trial in which the judge and the defendant engaged in a "lengthy colloquy." Ibid. Despite having a criminal history, the judge noted the defendant had never represented himself before, and when asked about the New Jersey Criminal Code, the defendant stated he did not "know too much about it" but would "study and learn about it" in the prison library. Ibid.

The judge proceeded to ask the defendant if he knew about potential statutory defenses in his matter and "test[ed] his knowledge of the New Jersey Rules of Evidence" without providing explanations for any of the questions the defendant was unable to answer. Id. 499-501. The Outland court explained that despite being unaware of the elements of the charges against him, "defendant remained steadfast in his desire to represent himself," and noted he would accept a public defender to assist during trial. Id. at 502.

A-2495-17

The judge denied defendant's request to proceed pro se, and noted the defendant was "[g]laringly . . . not aware of the nature of the charges being brought against him." Id. at 502-03 (alteration in original). The judge found the defendant could not cite any of the evidence rules, was unfamiliar with "rudimentary" concepts of hearsay, and should have notified the State about his motion to proceed pro se because "any lawyer would know that a motion must be made on notice to the other side." Ibid. As such, the judge concluded defendant was not knowingly and intelligently waiving his right to assistance of counsel. Ibid.

We affirmed in an unpublished opinion, see State v. Outland, No. A-2857-17 (App. Div. June 17, 2019), and the Supreme Court reversed and remanded for a new trial. Outland, 245 N.J. at 497. The Outland court concluded that the trial court "did not inform defendant of the nature and consequences of his waiver to ensure that waiver was knowing and intelligent, but rather quizzed him on a variety of criminal law topics." Id. at 507. The Court noted the judge's questions "were geared toward ascertaining whether [the] defendant was fit to practice law, not whether he understood the perils of self-representation." Id. at 508.

Under the requirements set out in Faretta, 422 U.S. 806, State v. Crisafi, 128 N.J. 499 (1992), and Reddish, 181 N.J. 553, the Court explained that a knowing and intelligent waiver requires a defendant to show "an understanding of the risks and consequences" of pro se representation "after he has been fully apprised—by the court—of those risks and consequences, as well of certain fundamental information about the offenses charged." Ibid. A knowing and intelligent waiver, the Court noted, does not require that "a defendant . . . have the 'knowledge' and 'intelligence' of a law school graduate." Ibid.

Instead of informing defendant about the nature of his charges, statutory defenses, and range of punishment, the Court found the judge "tested [the] defendant's knowledge." Ibid. When defendant asked for clarification, the judge responded, "I'm not your lawyer," contrary to the court's obligation under Crisafi and Reddish. Ibid.

The Outland court characterized the judge's examination as a "textbook example of testing [a] defendant's technical legal knowledge." Ibid. Even when a trial court follows the "format of the Crisafi/Reddish inquiry by covering the topics required," the Court noted the trial court must still "provid[e] [a defendant] the substantive information regarding the nature of his charges and applicable defenses" so that the defendant is "armed with the knowledge

necessary to make the decision to represent himself 'with eyes open.'"  Id. at 508-09.

We conclude the trial court here, as in Outland, 245 N.J. at 499-501, improperly focused and questioned defendant about substantive legal principles and evidence rules without appropriately explaining those principles when defendant showed his lack of knowledge on a particular topic.  Similarly, the court improperly relied on defendant's "understanding" of these substantive principles in reaching its conclusion and its line of questioning was "geared toward ascertaining whether defendant was fit to practice law, not whether he understood the perils of self-representation."  Id. at 508.  Rather than focus on "inform[ing] defendant of the nature and consequences of his waiver to ensure that waiver was knowing and intelligent," id. at 507, the court effectively quizzed defendant and, unsatisfied with his responses, summarily concluded his pro se representation would "mak[e] a mockery of justice."

Further, we are satisfied upon our further review that defendant showed "an understanding of the risks and consequences" of his pro se representation.  Id. at 508.  Defendant acknowledged his limited understanding of law and procedure could impair his ability to try his case but correctly noted that "there are restrictions on what you can say in openings or arguments to a jury," and

12

that he understood the difference between testifying and acting as pro se counsel. He also indicated his intention not to testify and fully planned to "stick[] strictly to the facts" to minimize risks to his right to remain silent. Finally, like the defendant in Outland, defendant "did not waver in his desire to represent himself." Id. at 509.

We acknowledge we previously stated that defendant "largely feigned or exaggerated his understanding of the risks and complications of pro se representation." Pugh, slip op at 47. Our analysis and attendant conclusion, however, focused too heavily on defendant's "technical legal knowledge," Outland, 245 N.J. at 508, rather than whether defendant waived his right to counsel in a knowing and intelligent manner. We are satisfied that defendant's decision to proceed at trial satisfied the principles detailed in Faretta, 422 U.S. 806, Crisafi, 128 N.J. 499, and Reddish, 181 N.J. 553, as further illuminated by the Court in Outland, and defendant's decision to represent himself was indeed, "with eyes open." Faretta, 422 U.S. at 835-36.

Further, as in Outland, we essentially, as did the trial court, placed inordinate emphasis on whether defendant was making a mistake in his decision to proceed pro se. As the Outland Court explained, however, the "concern regarding defendant's ability to represent himself, 'no matter how well-

13                                                                    A-2495-17

intentioned,' cannot override defendant's exercise of his right to decide to represent himself." Outland, 245 N.J. at 510 (quoting State v. King, 210 N.J. 2, 21 (2012)).

Reversed and remanded for a new trial consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION