SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Thomas H. Outland (A-38-19) (083242)**

**Argued September 30, 2020 -- Decided March 16, 2021**

**PIERRE-LOUIS, J., writing for the Court.**

In this case, the Court considers whether the trial court violated defendant Thomas Outland's constitutional right to represent himself at trial when it denied his request to proceed pro se.

In September 2015, defendant and a co-conspirator entered a McDonald's restaurant, holding what appeared to be guns and wearing masks. Defendant announced that it was a hold up but, when an employee stated defendant's gun was fake, defendant froze and then laughed and said he was joking. Defendant removed his mask, attempted to hug the manager, and instructed his co-conspirator to return items that had been taken. Two employees recognized defendant as a former employee.

A grand jury indicted defendant for robbery, conspiracy to commit robbery, and possession of an imitation firearm for an unlawful purpose. Trial in this matter was scheduled for February 2017. In November 2016, defendant filed a motion, pro se, requesting to represent himself. The trial court did not hold a hearing on that motion until three days before the scheduled start of trial.

At the hearing, the court took the time to conduct a lengthy colloquy. The court reviewed defendant's criminal history and confirmed that defendant had never represented himself in any of his prior matters. When the trial judge asked what defendant knew about the New Jersey Criminal Code, defendant stated that he did not "know too much about it," but he had access to the prison library where he could "study and learn about it."

The trial court then asked defendant to explain his understanding of the charges against him and which statutory defenses were applicable to his case. After confirming that the State was proceeding under a theory of accomplice liability, the court asked defendant, "Do you know what defenses apply to accomplice liability?" When defendant said he did not, the Court asked defendant if he knew the defenses of duress, mistake, and intoxication. When defendant asked, "Oh, you mean, like, intoxication as a defense?" the court replied, "I'm not your lawyer."

1

In another exchange, the court asked defendant, "What do you understand about the New Jersey rules of evidence?" Defendant said it pertains to "how . . . evidence applies and what evidence could be used." The court then asked for examples, and defendant explained that "if the State has evidence that was obtained . . . illegally, or without a . . . search warrant, maybe it can't be used." The court then asked defendant whether he could cite a rule of evidence. When defendant could not, the court asked defendant if he knew "what an admission by a party opponent is." When defendant replied that he could study that, the court stressed defendant had "three days to do so."

During the hearing, the trial court also conducted a colloquy with defense counsel regarding his legal experience; the colloquy was designed to "reaffirm to [defendant] how ill-conceived" defendant's wish to represent himself was. Lastly, the trial judge asked defendant a series of questions regarding the jury selection process, such as "What's a challenge for cause?" and "What is a peremptory challenge?"

Despite his inability to answer the technical legal questions, defendant remained steadfast in his desire to represent himself. However, the trial judge ultimately concluded that the record did not "even remotely" support "a finding that defendant had intelligently attempted to waive the assistance of counsel." The Public Defender's Office was substituted into the case, and trial was held in June 2017.

The jury found defendant not guilty of robbery but guilty of conspiracy to commit robbery and possession of an imitation firearm for an unlawful purpose. The Appellate Division affirmed defendant's convictions and sentence. The Court granted certification. 240 N.J. 531 (2020).

**HELD:** Because the trial court quizzed defendant on his knowledge of substantive law rather than provide the information required by New Jersey case law to confirm he was making a knowing and voluntary waiver of counsel, the denial of defendant's request to represent himself was an abuse of discretion.

1. In Faretta v. California, the United States Supreme Court held that the Sixth Amendment affords defendants the right to represent themselves when the decision to do so is made knowingly and intelligently. 422 U.S. 806, 835 (1975). In order to ensure that a defendant's waiver of counsel is knowing and intelligent, the Court has outlined topic areas that a trial court must explore with a defendant seeking to proceed pro se. See State v. Crisafi, 128 N.J. 499, 511-12 (1992); State v. Reddish, 181 N.J. 553, 594 (2004). In the Crisafi and Reddish opinions, the Court required trial courts to inform defendants seeking to proceed pro se about a list of subjects. See State v. DuBois, 189 N.J. 54, 468-69 (2007). The goal of the colloquy is not to ascertain whether a defendant possesses technical legal knowledge, but rather to apprise the defendant "of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Faretta, 422 U.S. at 835-36. Indeed,

2

a trial court "should specifically advise the defendants that it would be unwise not to accept the assistance of counsel." Crisafi, 128 N.J. at 512. Ultimately, however, the right to self-representation "is about respecting a defendant's capacity to make choices for himself, whether to his benefit or to his detriment." Reddish, 181 N.J. at 585. "[A] defendant's decision to proceed pro se may be fraught with risk but . . . the existence of such risk provides no basis to deny a defendant the right to make that choice." State v. King, 210 N.J. 2, 17 (2012). (pp. 14-16)

2. Noting the timing of the hearing on defendant's motion to proceed pro se in this case, the Court asks that trial courts be mindful of considering such motions in a timely manner and well in advance of the scheduled start of trial if it is practical to do so. (p. 17)

3. In the present case, the trial court took the time to engage defendant in an extensive inquiry regarding his desire to represent himself at trial. However, the Crisafi/Reddish inquiry requires trial courts to inform defendants of the nature of the charges, statutory defenses, and the range of punishment. Instead of informing defendant about those topics, the trial court tested defendant's knowledge. Although the trial court followed the format of the Crisafi/Reddish inquiry by covering the topics required, the court erred in quizzing defendant on those areas and not providing him the substantive information regarding the nature of his charges and applicable defenses. The Court finds this case similar to King, where the trial court's questioning of a defendant seeking to proceed pro se improperly focused on "whether defendant had technical legal knowledge, not whether he comprehended the risks and consequences of acting as his own attorney." King, 210 N.J. at 21. As in King, see id. at 22, the Court reverses defendant's convictions because the trial court failed to honor his right to choose to represent himself. (pp. 17-20)

4. Throughout the hearing, defendant did not waver in his desire to represent himself. Although technical knowledge of the law is not required to proceed pro se, defendant was familiar with the criminal justice system and expressed an understanding of admissible evidence. Notably, despite his lack of legal experience, defendant, acting pro se, drafted and filed both the appellate brief and the petition for certification in this matter. It is evident from the record that the trial court, concerned that defendant might make a grave mistake in choosing to represent himself and recognizing the magnitude of the decision to go pro se, took the time and patience to conduct an extensive hearing on defendant's motion. But the trial court's concern regarding defendant's ability to represent himself, "no matter how well-intentioned, cannot override defendant's exercise of his right to decide to represent himself." See King, 210 N.J. at 21. (pp. 21-22)

**REVERSED and REMANDED for a new trial on the counts of conviction.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE PIERRE-LOUIS's opinion.**

State of New Jersey,

Plaintiff-Respondent,

v.

Thomas H. Outland, a/k/a
Thomas Go Outland,
Islam Goodwin, and
Thomas H. Jamison,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| September 30, 2020 | March 16, 2021 |

Michael Denny, Assistant Deputy Public Defender,
argued the cause for appellant (Joseph E. Krakora, Public
Defender, attorney; Michael Denny, of counsel and on
the briefs, and Thomas H. Outland, pro se, on the
supplemental brief).

Michele C. Buckley, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued the cause for
respondent (Lyndsay V. Ruotolo, Acting Union County
Prosecutor, attorney; Michele C. Buckley, of counsel and
on the briefs).

In this case, we are asked to determine whether the trial court violated defendant's constitutional right to represent himself at trial. Defendant sought to represent himself, but the trial court denied his request. On appeal, the Appellate Division affirmed defendant's convictions and held that the trial court did not abuse its discretion in denying defendant's request to proceed pro se. Because the trial court quizzed defendant on his knowledge of substantive law rather than provide the information required by our case law to confirm he was making a knowing and voluntary waiver of counsel, we reverse the decision of the Appellate Division and remand the matter for a new trial.

I.

A.

We rely on the testimony at trial for the following summary. In the early morning hours of September 4, 2015, defendant Thomas Outland, along with a co-conspirator who has never been identified, entered a McDonald's restaurant on Route 22 in Scotch Plains. According to witnesses, defendant held what appeared to be a shotgun and his co-conspirator held what appeared to be a revolver; both men were wearing masks. It was approximately 12:30 a.m., and several employees were in the restaurant cleaning up in preparation for closing

2

the restaurant at 1:00 a.m. The co-conspirator approached a McDonald's employee, demanded his phone, and took it from him. The co-conspirator then approached another employee and told him to hand over everything the employee had on him. The employee was scared and handed over his cell phone, a $20 bill, and all the papers he had in his pockets.

At the same time, defendant walked straight back to the manager's office, where Juan Martinez was putting away cash and receipts for the night. Defendant entered and stated, "[h]old up, hold up, you're being robbed." Another employee, Lucksonn Exume, was near the manager's office and overheard defendant's statements. Exume was familiar with firearms through his military service and believed defendant was holding a fake shotgun. Exume approached defendant and stated, in a loud and forceful voice, "what the f--- did you do with that fake toy[] gun." According to Exume, after he made that statement, defendant froze and then laughed and stated that he was joking. Defendant removed his mask and attempted to hug the manager and shake his hand. Defendant instructed his co-conspirator to return the items he took from the employees in the lobby, and then both men left the restaurant. Martinez and another employee present in the store at the time recognized defendant as a former McDonald's employee.

3

B.

In February 2016, a Union County grand jury indicted defendant for first-degree robbery, N.J.S.A. 2C:15-1; conspiracy to commit robbery, N.J.S.A. 2C:5-2 and 2C:15-1; and fourth-degree possession of an imitation firearm for an unlawful purpose, N.J.S.A. 2C:39-4(e).

Trial in this matter was scheduled for February 13, 2017. In November 2016, defendant filed a motion, pro se, requesting to represent himself. The trial court did not hold a hearing on that motion until February 10, 2017 -- three days before the scheduled start of trial. At the hearing, the court took the time to conduct a lengthy colloquy. The court reviewed defendant's criminal history and confirmed that defendant had never represented himself in any of his prior matters. When the trial judge asked defendant what he knew about the New Jersey Criminal Code, defendant stated that he did not "know too much about it," but he had access to the prison library where he could "study and learn about it."

The trial court then asked defendant to explain his understanding of the charges against him. A discussion followed between the court and the assistant prosecutor who explained that if defendant was convicted of all counts, he faced a mandatory extended term of 20 years to life imprisonment as a result of his prior offenses. Defendant, at the time of the hearing, was

4

already serving a 16-year sentence for another robbery, so the prosecutor also explained that any sentence in the present case would run consecutive to his 16-year sentence.

The trial court then asked defendant which statutory defenses were applicable to his case and the following exchange occurred:

> THE COURT: Okay. Now, can you tell me what your understanding of the statutory defenses are as it applies to this case.
>
> THE DEFENDANT: All right. Of what?
>
> THE COURT: What I just asked you. What are the statutory defenses which apply to your matter?
>
> THE DEFENDANT: What would I apply to -- to my case?
>
> THE COURT: Not -- not what your factual defenses are, what your statutory defenses are.
>
> THE COURT: The State is -- is proceeding under accompli[ce] liability, correct?
>
> THE PROSECUTOR: Principal and accomplice.
>
> THE COURT: Okay.
>
> THE COURT: Do you know what defenses apply to accomplice liability?
>
> THE DEFENDANT: No.
>
> THE COURT: Do you know what renunciation means?
>
> THE DEFENDANT: No.

5

THE COURT:  Do you know the defense of duress?

THE DEFENDANT:  No.

THE COURT:  Mistake?

THE DEFENDANT:  I can't say that I do.

THE COURT:  Intoxication?

THE DEFENDANT:  Of what?

THE COURT:  As -- as a defense.

THE DEFENDANT:  Oh, you mean, like, intoxication as a defense?

THE COURT:  I'm not -- I'm not your lawyer.

THE DEFENDANT:  I mean, I understand that, intoxication, if I'm going to use that as a -- as a defense. I understand that.

The trial court continued to query defendant by testing his knowledge of the New Jersey Rules of Evidence.

THE COURT:  What do you understand about the New Jersey rules of evidence?

THE DEFENDANT:  Evidence?

THE COURT:  Yes.

THE DEFENDANT:  I mean, I -- I -- I mean, I can't sit here and actually quote anything about that, but I've -- I've read, through all my studies, I've read, you know, the rule about evidence, how --

6

THE COURT: What's --

THE DEFENDANT: -- evidence applies and what evidence could be used, what can't be used and terms like that.

THE COURT: Can you give me some examples, sir?

THE DEFENDANT: As far as, like, if -- say, like, if the State has evidence that was obtained, say by the police, illegally, or without a search -- search warrant, maybe it can't be used.

THE COURT: Is there a search at issue here, Mr. [Prosecutor]?

THE PROSECUTOR: There is not, Judge.

THE DEFENDANT: Not.

THE COURT: Okay. I'm going to ask you again, what do you know about the rules of evidence, which is critical, a critical foundation to trial work?

THE DEFENDANT: Like I said, I can --

THE COURT: Can you cite me to one rule?

THE DEFENDANT: No, not offhand, no.

THE COURT: Do you know what an admission by a party opponent is?

THE DEFENDANT: Admission by a party opponent?

THE COURT: Yes. Do you know what that is legally?

THE DEFENDANT: No, can't say that I do. Would that have anything to do with my guilt?

7

THE COURT:  It -- it surely does, yes.

THE DEFENDANT:  No, that's something I can study up on.

THE COURT:  Well, you've got three days to do so, sir, because the trial's scheduled to start on the 13th.

THE DEFENDANT:  Sure I can get it done.

The trial judge also asked defendant to recite the elements of first-degree robbery, and defendant incorrectly stated that bodily injury was a required element.  When asked to explain the elements of conspiracy to commit robbery, defendant stated that he "didn't read up on conspiracy because it doesn't pertain to [his] case."  The judge then advised defendant that he was charged with first-degree conspiracy to commit robbery.[1]  Defendant stated that he wanted to see the indictment because, according to him, if the conspiracy charge had been on the paperwork he received from defense counsel, he would have researched that charge.  The trial judge asked defense counsel whether he provided defendant with a copy of the indictment, and defense counsel replied that he provided defendant with "some discovery" and

---

[1]  Pursuant to N.J.S.A. 2C:5-4, conspiracy to commit first-degree robbery is a second-degree offense.  Both the indictment and the judgment of conviction incorrectly noted the offense as first-degree conspiracy.  On remand from the Appellate Division, the judgment was corrected to accurately reflect the offense as second-degree conspiracy to commit robbery.

8

that he believed defendant had received the indictment from his previous attorney.

During the hearing, the trial court also conducted a colloquy with defense counsel regarding his legal experience, the number of criminal matters and trials he had previously handled, and his familiarity with the Rules of Evidence. The trial judge told defendant that the questions of his defense attorney were designed to "reaffirm to [defendant] how ill-conceived" defendant's wish to represent himself was.

Lastly, the trial judge asked defendant a series of questions regarding the jury selection process.

> THE COURT: What do you know about the jury selection process?
>
> THE DEFENDANT: I've been through that before.
>
> THE COURT: What's a challenge for cause? What does that mean?
>
> THE DEFENDANT: Challenge for cause?
>
> THE COURT: Yes, sir.
>
> THE DEFENDANT: I have no idea. I can't tell you what that means.
>
> THE COURT: What is a peremptory challenge? Do you know what that is, sir?
>
> THE DEFENDANT: No.

9

THE COURT:  Do you know how many peremptory challenges you're entitled to?

THE DEFENDANT:  I believe six.

THE COURT:  No.

THE DEFENDANT:  Six or eight.

THE COURT:  No.

THE DEFENDANT:  No?

THE COURT:  No.  For a first-degree offense, I believe it's 20.

THE COURT:  Am I correct?

THE PROSECUTOR:  I believe it's 20 and 12, Judge. Twenty for the defense and 12 for the State.

THE DEFENDANT:  All right.

Despite his inability to answer the technical legal questions, defendant remained steadfast in his desire to represent himself and noted that he "studied his case to the fullest" and knew "everything there is to know about [his] case."  Defendant told the judge that he believed he was the best person to represent himself.  He stated that he had already fired his attorney and submitted an application to the Public Defender's Office.  When the trial judge asked whether defendant would accept representation from the Public Defender's Office, defendant made clear that he wanted to represent himself but would accept having a public defender sit beside him while he did so.

10

At the conclusion of the hearing, the trial judge placed extensive findings on the record in denying defendant's request to proceed pro se. The trial judge noted that defendant had never represented himself in any of his prior criminal matters and remarked that, "[g]laringly, he [was] not aware of the nature of the charges being brought against him." The judge further noted that defendant "could not cite the Court to a single rule of evidence" and was "unfamiliar with a rudimentary concept of an admission by a party opponent." When the assistant prosecutor advised that he did not receive notice of defendant's motion to represent himself until the judge's law clerk informed him of the motion, the judge stated, "of course any lawyer would know that a motion must be made on notice to the other side, and that just indicates . . . there is a lack of knowingness and -- frankly a lack that this attempted waiver is made intelligently." The trial judge concluded that he could not find that the record supported "even remotely a finding that defendant has intelligently attempted to waive the assistance of counsel."

The trial court granted defendant's application to terminate his attorney, and the Public Defender's Office was substituted into the case. The trial court adjourned the February trial date, and trial was held from June 13-20, 2017. At the conclusion of the trial, the jury found defendant not guilty of the first-degree robbery charge but guilty of conspiracy to commit robbery and

possession of an imitation firearm for an unlawful purpose. The court sentenced defendant to an aggregate term of nine years' imprisonment, with three years of parole ineligibility.

C.

Defendant appealed, claiming, through counsel, that the trial court erred in an instruction to the jury; he additionally requested that the judgment of conviction be amended to accurately reflect that the conspiracy conviction was a second-degree offense. Defendant also filed a pro se brief to the Appellate Division in which he argued that the trial court violated his constitutional right to represent himself.

In an unpublished opinion, the Appellate Division affirmed defendant's convictions and sentence.[2] Regarding defendant's motion to represent himself, the Appellate Division noted that "it is not so clear that defendant actually wanted to represent himself" because he wanted a public defender sitting by his side, whom the Appellate Division concluded was "more than just stand-by counsel." Relying on Faretta v. California, 422 U.S. 806, 836 (1975), the court acknowledged that the trial judge's questions focused "narrowly on

---

[2] The Appellate Division remanded the matter only for the purpose of amending the judgment of conviction to reflect that the conspiracy conviction was for second-degree conspiracy to commit robbery as opposed to the incorrectly noted first-degree conspiracy charge.

12

[defendant's] technical knowledge, which is not dispositive of a knowing, intelligent, and voluntary waiver of the right to counsel." Nevertheless, the Appellate Division found that defendant did not make a knowing and intelligent waiver because three days prior to trial, defendant did not know the charges and penalties he faced if convicted.

Defendant filed a petition for certification, pro se, on the sole issue of whether the trial court abused its discretion in denying his motion to represent himself. On January 28, 2020, we granted defendant's petition. 240 N.J. 531 (2020).

## II.

## A.

Defendant argues that the trial court violated his constitutional right to represent himself in denying his motion to proceed pro se. Defendant contends that the trial court failed to conduct the type of colloquy required by this Court's jurisprudence to determine whether he knowingly and intelligently waived his right to counsel. Defendant argues that the trial court instead posed questions during the hearing that narrowly focused on defendant's technical legal knowledge, which is irrelevant to his knowing and intelligent waiver. Defendant asserts that none of the trial court's questions bore on whether he comprehended the risks and consequences of representing himself at trial.

13

Defendant argues that the trial court's error requires that his convictions be reversed and the matter remanded for a new trial.

### B.

The State argues that the trial court did not abuse its discretion in denying defendant's motion to represent himself because defendant did not knowingly and intelligently waive his right to counsel. The State contends that the court properly found that defendant lacked an understanding of the charges against him, the elements of each offense, and the rules of evidence applicable to his case. According to the State, the record supports the trial court's denial of defendant's motion, so the State urges this Court to affirm the Appellate Division's decision.

### III.

The Sixth Amendment of the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution both guarantee all defendants in criminal prosecutions the right to have the assistance of counsel for their defense. "The corollary to the right of a criminal defendant to be represented by an attorney is the defendant's right to represent himself." State v. King, 210 N.J. 2, 16 (2012) (citing Faretta, 422 U.S. at 814). In Faretta, the United States Supreme Court held that the Sixth Amendment affords defendants the right to represent themselves when the decision to do so is made knowingly

14

and intelligently.  422 U.S. at 819, 835.  Because the "[a]ssistance of counsel is essential to ensuring fairness and due process in criminal prosecutions," relinquishing one's right to the benefits of representation by counsel can be allowed only when the court is satisfied that the defendant understands "the implications of the waiver [of counsel]."  State v. Crisafi, 128 N.J. 499, 509, 511 (1992).

In order to ensure that a defendant's waiver of counsel is knowing and intelligent, this Court has outlined topic areas that a trial court must explore with a defendant seeking to proceed pro se.  See id. at 511-12; State v. Reddish, 181 N.J. 553, 594 (2004).  In the Crisafi and Reddish opinions, we required trial courts to inform defendants seeking to proceed pro se about:

> (1) the nature of the charges, statutory defenses, and possible range of punishment; (2) the technical problems associated with self-representation and the risks if the defense is unsuccessful; (3) the necessity that defendant comply with the rules of criminal procedure and the rules of evidence; (4) the fact that the lack of knowledge of the law may impair defendant's ability to defend himself or herself; (5) the impact that the dual role of counsel and defendant may have; (6) the reality that it would be unwise not to accept the assistance of counsel; (7) the need for an open-ended discussion so that the defendant may express an understanding in his or her own words; (8) the fact that, if defendant proceeds pro se, he or she will be unable to assert an ineffective assistance of counsel claim; and (9) the ramifications that self-representation will have on the right to remain silent and the privilege against self-incrimination.

15

[State v. DuBois, 189 N.J. 454, 468-69 (2007) (synthesizing the requirements set forth in Crisafi and Reddish).]

Caselaw makes clear that the goal of the colloquy is not to ascertain whether a defendant possesses technical legal knowledge. See Faretta, 422 U.S. at 836 ("[The defendant's] technical legal knowledge . . . was not relevant to an assessment of his knowing exercise of the right to defend himself."). The purpose of the extensive and detailed inquiry is to apprise the defendant "of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Id. at 835 (quotation omitted). Indeed, a trial court "should specifically advise the defendants that it would be unwise not to accept the assistance of counsel." Crisafi, 128 N.J. at 512. Ultimately, however, the right to self-representation "is about respecting a defendant's capacity to make choices for himself, whether to his benefit or to his detriment." Reddish, 181 N.J. at 585. "[A] defendant's decision to proceed pro se may be fraught with risk but . . . the existence of such risk provides no basis to deny a defendant the right to make that choice." King, 210 N.J. at 17.

Our appellate courts review a trial court's denial of a defendant's motion to represent himself for abuse of discretion. DuBois, 189 N.J. at 475. When a

defendant's right of self-representation is violated, reversal of the defendant's conviction is warranted. King, 210 N.J. at 22. "The right [of self-representation] is either respected or denied; its deprivation cannot be harmless." Ibid. (alteration in original) (quoting McKaskle v. Wiggins, 465 U.S. 168, 177 n.8 (1984)).

## IV.

In the present case, the trial court, without a doubt, took the time to engage defendant in an extensive inquiry regarding his desire to represent himself at trial. Unfortunately, the trial court's colloquy fell short of that required by our jurisprudence; accordingly, the court's denial of defendant's request to represent himself was an abuse of discretion.[3]

As evidenced by the transcript of the hearing, the trial court did not inform defendant of the nature and consequences of his waiver to ensure that waiver was knowing and intelligent, but rather quizzed him on a variety of criminal law topics. The trial court's questioning reads more like a bar examination than a colloquy to determine whether defendant understood the

---

[3] Although defendant filed his motion to represent himself in November 2016, the trial court did not conduct the hearing on the motion until February 10, 2017, three days before trial. We ask that trial courts be mindful of considering such motions in a timely manner and well in advance of the scheduled start of trial if it is practical to do so.

17

consequences of acting as his own attorney at trial. The trial court essentially transformed the colloquy from one assessing whether defendant was making a knowing and intelligent waiver to a test of whether defendant was capable of intelligently reciting the law as proficiently as a practicing attorney.

As the United States Supreme Court made clear in Faretta, the purpose of the inquiry is not to test a defendant's technical legal expertise, but to ensure that he makes his decision to waive counsel "with eyes open." Here, the court's questions were geared toward ascertaining whether defendant was fit to practice law, not whether he understood the perils of self-representation. To be sure, a knowing and intelligent waiver under Faretta, Crisafi, and Reddish does not suggest that a defendant must have the "knowledge" and "intelligence" of a law school graduate. Rather, a knowing and intelligent waiver must reflect that the defendant has an understanding of the risks and consequences of representing himself after he has been fully apprised -- by the court -- of those risks and consequences, as well as of certain fundamental information about the offenses charged.

As noted above, the Crisafi/Reddish inquiry requires trial courts to inform defendants of the nature of the charges, statutory defenses, and the range of punishment. DuBois, 189 N.J. at 468-69. Instead of informing defendant about those topics, the trial court tested defendant's knowledge. For

18

example, the trial court posed a series of questions asking defendant to define various statutory defenses, but defendant was unable to do so. When defendant was unable to explain the defense of intoxication and asked the court for clarification, instead of explaining the defense as directed by <u>Crisafi</u> and <u>Reddish</u>, the trial judge responded, "I'm not your lawyer." The trial court also pressed defendant to recite a New Jersey Rule of Evidence, asked him to define peremptory challenges and challenges for cause, and expected defendant to detail the elements of each of the offenses for which he was charged.

The colloquy here was a textbook example of testing defendant's technical legal knowledge as opposed to determining whether he was knowingly and intelligently waiving his right to counsel. Although the trial court followed the format of the <u>Crisafi</u>/<u>Reddish</u> inquiry by covering the topics required, the court erred in quizzing defendant on those areas and not providing him the substantive information regarding the nature of his charges and applicable defenses. Instead of asking him whether he knew what statutory defenses were, the trial court should have explained to defendant the defenses that were applicable to his case. Instead of questioning defendant about the possible range of punishment and then admonishing him for not knowing the correct answer, the trial court should have provided that

19

information to defendant in the first instance so that he would understand what he was facing and be armed with the knowledge necessary to make the decision to represent himself "with eyes open."

In sum, the colloquy should have "test[ed] the defendant's understanding of the implications of the waiver," not his understanding of substantive law. See Crisafi, 128 N.J. at 511. Certainly, the right of a layperson to represent himself would be of no meaning if every defendant were required to establish that he possessed "the skill and experience of a lawyer in order competently and intelligently to choose self-representation." Faretta, 422 U.S. at 835.

This case is similar to King, where this Court held that the trial court's questioning of a defendant seeking to proceed pro se improperly focused on "whether defendant had technical legal knowledge, not whether he comprehended the risks and consequences of acting as his own attorney." King, 210 N.J. at 21. In King, we reversed the convictions because the trial court failed to honor the defendant's right to choose to represent himself. Id. at 22. We reach the same conclusion here.

20

Throughout the hearing, defendant did not waver in his desire to represent himself.[4] Although technical knowledge of the law is not required to proceed pro se, defendant demonstrated that he understood the basic concepts of hearsay in stating that he knew he could not "say anything anyone else said." Additionally, although defendant had never represented himself in his prior criminal matters, he was familiar with the criminal justice system, had participated in his own criminal trials, and had observed the criminal trials of others. Defendant further expressed an understanding of admissible evidence in explaining that "if the State has evidence that was obtained . . . illegally, or without a search -- search warrant, maybe it can't be used." Notably, despite his lack of legal experience, defendant, acting pro se, drafted and filed the appellate brief that first raised before the Appellate Division the issue of

---

[4] The Appellate Division concluded that it was unclear whether defendant actually wanted to represent himself because he wanted an assistant public defender seated beside him. The Appellate Division determined that defendant's request was for "more than standby counsel." On the contrary, there is no evidence in the record to suggest that defendant sought anything more than standby counsel. When asked whether he would accept an assistant public defender to represent him, defendant specifically stated, "No. I want to represent myself. I would accept a Public Defender to sit by my side while I represent myself." Based on defendant's statements at the hearing, what he sought was the very definition of standby counsel. See Faretta, 422 U.S. at 834 n.46 (explaining that a court may "appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary").

21

whether the trial court violated his right to self-representation. He also drafted and filed the petition for certification that we granted to bring this matter before our Court.

We note once again that it is evident from the record that the trial court, concerned that defendant might make a grave mistake in choosing to represent himself and recognizing the magnitude of the decision to go pro se, took the time and patience to conduct an extensive hearing on defendant's motion. But the trial court's concern regarding defendant's ability to represent himself, "no matter how well-intentioned, cannot override defendant's exercise of his right to decide to represent himself." See King, 210 N.J. at 21.

V.

The judgment of the Appellate Division is reversed, and the matter is remanded for a new trial on the conspiracy and possession of an imitation firearm counts.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE PIERRE-LOUIS's opinion.